Sneed, J.,
delivered the opinion of the Court.
The plaintiff brought his action of replevin in the Circuit Court of the county of Campbell to recover a chattel described in the pleadings as a Cast Iron Cane Mill. The verdict and judgment were for the defendant. The plaintiff appealed. He insists that the verdict and judgment are contrary to the law and evidence, but he has assigned no error of law in the charge of the Circuit Judge, nor is the charge itself incorporated in the bill of exceptions. We are to assume that the Court gave the jury a correct exposition of the law as applicable to the facts of the case, and we are to determine it upon our convictions of the law.
The rule of this Court as to granting new trials upon the mere facts of a case has been so often reiterated since it was announced in the early case of Kelton v. Bevins, Cooke’s R. 90, 109, that it has become, al *90 most an axiom of our law, that this Court will not disturb the judgment of an inferior court in granting or refusing a new trial in civil cases, unless it very dearly appear that the inferior court has erred. That the au-. thority of this Court to invade the province of a jury ought to be used with extreme caution and should indeed never be used except in very clear cases, leaving those merely doubtful, to rest where the jury left them. Whites’ lessee v. Hembree, 1 Tenn. R., 529 et seq.
In the case now in judgment, the original writ is in replevin, and the return shows that the process was served upon defendant, but the possession of the property was not obtained by the Sheriff. The plaintiff had leave to amend his declaration, and it seems that a count in trover was inserted. Under the Code, where possession is not had under the writ of replevin, and defendants are summoned, the plaintiff may elect to proceed in case or detinue, and the cause shall be conducted as if the leading process had been in one of those forms. Code, § 338.8.
This is, in legal effect, an action of detinue, to try the title to the chattel in controversy, with a count in trover, which, in this case,, involves the same question. The doctrine of the law regulating these actions, is so familiar, that a mere statement of the principles applicable to this case, is only demanded here. The action of replevin or detinue .will lie wherever the goods of another are wrongfully held or detained from him, whether the possessor obtained possession of them rightfully or wrongfully. The action of trover assumes that •there has. been, an unlawful appropriation or .conversion *91 of the plaintiff’s goods, to the use of the defendant. To constitute a conversion, some act must he done in reference to the property, in derogation to the owner’s right of control and dominion over it. 1 Chitty’s Pl. 153; 1 Greenl. Ev. § 642; Scruggs v. Davis, 5 Sneed, 265.
The case at bar presents a state of facts, which, in the opinion of the Court, well warranted the verdict of the jury and the judgment of the Circuit Court.
The plaintiff, about the last of July, 1863, bargained and sold the chattel in question to the defendants, and agreed to take two hundred dollars in Confederate money. The real value of the property at the -time of the contract, in good money, was proven to be seventy-five dollars. The defendant, Elkins, who was contracting for himself and the defendant, Vinsant, was told by the plaintiff at the time of the sale, that the cane mill was in an outhouse on his farm. That he, the defendant, Elkins, could go and get it at any time, and that he could pay him the money at any time. The witness who testified as to the trade, was called to witness it, and did witness it. He saw the property some weeks afterward, in the possession of the defendants. It also appears, that, soon after the siege of Knoxville, the defendant tendered the amount of Confederate Treasury notes contracted for, to the plaintiff, who declined the same, observing that “the time for Confederate money has passed.” In the conversation that occurred at the .timé of the tender, nothing was said about the terms of the contract. The mill was spoken of, but there was no denial of the bargain.
On behalf of the plaintiff, it was shown, that, toward *92 the latter part of August, 1863, the defendant, Elkins, went to get possession of the mill, and demanded the same- of witness, Peterson, who, it seems, was plaintiff’s agent on the farm, and Peterson declined to deliver it, remarking that he had no authority to do so. Some days afterward, Peterson saw Elkins hauling the mill away. He gave him no authority to do so.
The plaintiff has proceeded upon the idea that the contract was, in its inception, void, as it was a contract to give and receive Confederate money as the consideration for the chattel sued for. In the absence of the charge of the Court, we are not permitted to speculate as to the doctrines of the law announced by his Honor for the guidance of the jury. It might have been held, perhaps, that even if the contract was ab initio, void, yet the transaction shows the parties in pari delicto, and that, according to the well known maxim, where each party is equalliy at fault, the law favors him who is in possession. Rider v. Kidder, 10 Ves. 366; Smith v. Bromley, Doug. B.., 696. Or that in view of the tender made by defendants, this was an executed contract, which, in this form of action, would not be disturbed. 3 Cold., 472. Or, that the contract was executed so far as plaintiff was concerned, and that defendant’s right of property could not be disturbed. Story on Con., §§18, 19 and 20. Or, it may be, that the convictions of the Court were identical with those governing this Court in the disposition of the cause.
In the view this Court has taken of the case, the question as to the validity of the original contract does not arise. Nor is it incumbent upon us, here to pro *93 nounce upon the plaintiff’s right, in an appropriate action, to recover the value of the property in controversy.
The plaintiff, though it seems 'he made an injudicious bargain, had, nevertheless, the right to make his own contracts, and we are to assume that he was fully capable of contracting, and that the trade was upon his own judgment and reckoning, unaffected by duress, and without the semblance of fraud or covin on the part of the defendants. It was a venture on the part of the plaintiff, which, as a speculation, depended upon the result of our late unhappy civil war, and which might or might not have brought him back a good return. The sale of the chattel was complete the instant both parties had agreed upon its terms. Meigs’ R., 22; 5 Hum., 108. The verbal sale and delivery vested the defendants with a good title. Tatum v. Jameson, 2 Hum., 298. Though no actual manual delivery of the chattel was made by the plaintiff to the defendants, yet the words of the plaintiff were equivalent thereto. He told the defendant where the property was, and authorized him to go and get it, whenever he chose to do so. From that moment, in contemplation of law, the property was in the constructive possession of the defendant, which • was soon reduced to actual manual possession, in pursuance of the terms of his bargain. The plaintiff at no time denied or ignored the existence of his contract. He did not do so before he began his litigation. His bill of exceptions discloses no repudiation of it, as insisted by him, other than such as is imported by his refusal of the defendant’s tender, after he had found he had made a bad bargain. Nor does the law permit a party thus *94 to adjust and adjudicate the rights of his neighbor, growing out of a deliberate bargain of his own with that neighbor. It has been said that “good faith is the exchequer of princes: the more it is drawn upon, the stronger it becomes.”
The law, which is, at last, but the interpretation of natural justice, had rather exact the utmost farthing in an extremely hard case, based upon deliberate contract, than invoke the prevalence of public and private dishonesty, by relieving a party of his solemn engagements, because he had made a bad bargain.
Under this contract the title to the property was absolutely vested in defendant; nor does the statement of the agent of the plaintiff, that when the defendant demanded the property he declined to surrender it, because he had no authority to do so, negative the plaintiff’s continued acquiescence in the trade until the result of the siege of Knoxville had disclosed or foreshadowed the failure of his speculation, if, indeed, such a negative could have affected the rights of the defendant at all. The. title being thus vested in the defendant, the Court is of opinion that the actions of replevin or detinue will not lie for the recovery of the property, nor the action of trover for its conversion. In this view of the case, the question whether the contract was void or voidable upon the ground assumed in argument, is an abstract question the Court does not undertake to determine; nor is the Court now called upon to pronounce upon the plaintiff’s right to recover the value of the property in a proper form of action.
Let the judgment be affirmed.